**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

INTERNATIONAL HAIR AND BEAUTY
SYSTEMS, LLC, d/b/a SIMPLY ORGANIC

                Plaintiff,          **Case No.:**

vs.

ROLLAND S.R.L., & LUCA LAGANA,

                Defendants.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, International Hair and Beauty Systems, LLC, d/b/a Simply Organic ("Plaintiff" or "Simply Organic"), by and through its undersigned counsel, hereby sues Defendants, Rolland, S.r.l. ("Defendant Rolland"), and Luca Lagana ("Defendant Lagana") (together, "Defendants"), and in support thereof, respectfully states as follows:

### Nature of the Action; Jurisdiction, Venue, & Parties

1.      This is an action for fraud; tortious interference with business relationships; breach of contract; and unjust enrichment.

2.      Simply Organic is, and at all relevant times was, a limited liability company incorporated under the laws of the State of Florida, with a principal place of business in Pinellas County, Florida. Each and all of Plaintiff's members is a citizen and resident of the State of Florida.

3.      Defendant Rolland is, and at all relevant times was, an entity incorporated under the laws of the Italian Republic, with a principal place of business in Bologna, Italy.

4.      Defendant Lagana is, and at all relevant times was, a citizen of the Italian Republic, and a resident of Bologna, Italy.

5.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiff and each Defendant, and because the amount in controversy in this action exceeds $75,000.

6.     This Court has personal jurisdiction over each Defendant pursuant to the Florida Long-Arm Statute, § 48.193.  Each of Defendant Lagana and Defendant Rolland, including at Defendant Lagana's direction, has for several years, including arising out of a written agreement with Plaintiff, transacted business with Plaintiff that included business activities and repeated, consistent contacts in Florida.  Each Defendant committed tortious acts and omissions in Florida, which caused injury to Plaintiff in Florida at a time when Defendant Rolland products, at Defendant Lagana's direction, were manufactured for use in, shipped to, and used or consumed within Florida in the ordinary course of commerce, trade, or use.  Defendant Rolland, at Defendant Lagana's direction, has been marketing and attempting to sell its products to the United States, including Florida, in direct contravention of a contract with Simply Organic of which material portions were created and performed in Florida.  Moreover, these Defendants have undertaken such marketing/selling activities via conduct outside Florida, the effects of which by Defendants' design have been felt in Florida and throughout the United States.

7.     Venue is proper in this Court pursuant to each of 28 U.S.C. § 1391(b)(2)-(3), and 28 U.S.C. § 1391(c)(2)-(3).

## Facts Common to All Counts

8.     Simply Organic is a Florida-based entity that sources and distributes organic, high-quality, environmentally responsible beauty products to salons and professional cosmetologists.

9. Simply Organic has, over the course of several years, developed a strong business reputation and stable, growing roster of clients in its industry.

10. Simply Organic has also facilitated entry by manufacturers of organic beauty products into new, lucrative markets, including the North American market, to those manufacturers' great financial benefit.

11. Defendant Rolland is one of those above-described manufacturers, and Defendant Lagana is its chief executive officer.

12. In June 2015, as a result of negotiations that took place in Pinellas County, Florida, and Bologna, Italy, Simply Organic and Defendant Rolland – which was, and for at least the next two years, would continue to be, financially in need and especially reliant on its business relationship with Simply Organic – entered into an agreement, a true and correct copy of which is attached as Exhibit A hereto, titled "Exclusive Distribution Agreement" (the "Agreement"), by which Simply Organic became the sole and exclusive distributor of Defendant Rolland's products in the United States and Canada, and in exchange guaranteed to make six- and seven-figure annual minimum purchases of Defendant Rolland's products over the next period of years.

13. Key terms in the Agreement include:

a. Section 1.3(B) defines the term "Territory" to mean "United States of America and Canada including their territories, possessions and commonwealths."

b. In Section 2.1, Defendant Rolland "appoints" Simply Organic "as exclusive distributor of [Defendant Rolland products], with the exclusive right to market, distribute and sell, under its own name and for its own account, [Defendant Rolland products] within the Territory."

c.  Section 3.1 sets forth that "The Territory is granted to [Simply Organic] on an exclusive basis. Therefore [Defendant Rolland] shall not, directly or through its agents or consultants, take actions for the promotion and marketing of its Products within the Territory."

d.  Section 3.2 sets forth that "In the event that [Defendant Rolland] becomes aware of possible business deals within the Territory in relation to [its] Products it shall be obliged to inform [Simply Organic] of such opportunity so that [Simply Organic] may take steps if [Simply Organic] considers it opportune."

e.  Section 7 sets forth Simply Organic's required annual "minimum purchase amounts" from Defendant Rolland, which range from €700,000, EUR, to €1,300,000, EUR, between calendar years 2016 and 2018.

14.  Between June 2015 and September 2017, Simply Organic substantially met or exceeded its obligations, including purchasing obligations, under the Agreement. During this time period, Simply Organic endured Defendant Rolland's substantial production delays and manufacturing quality issues in connection with its purchases and exclusive territorial distribution of Defendant Rolland's products, but did not terminate the Agreement or its business relationship with Defendant Rolland.

15.  On April 5, 2017, fewer than twenty-four months after the Agreement went into effect, representatives of Simply Organic and Defendant Rolland met in Ibiza, Spain, to discuss the future of the Agreement parties' business relationship in light of Defendant Rolland's ongoing extreme production and shipping delays.

16.  After this meeting, the Agreement parties determined to continue the business relationship and negotiate certain amendments to the Agreement. Thereafter, between April and

September 2017, via telephone and electronic communications in Pinellas County, Florida, and Bologna, Italy, Simply Organic and Defendant Rolland negotiated and executed amendments to several Agreement terms, which resulted in a document, a true and correct copy of which is attached as Exhibit B hereto, titled "Amended Exclusive Distribution Agreement" (the "Amendment").

17.     Simply Organic desired the Amendment to secure greater stability in its business relationship with Defendant Rolland, as well the opportunity – given Simply Organic's actual and anticipated substantial investment of time and money into building up Defendant Rolland financially while developing Defendant Rolland's brand in the United States and Canada – to be provided meaningful notice to draw down the relationship if and when Defendant Rolland ever sought to terminate the Agreement.

18.     Defendant Rolland desired the Amendment in material part so as to (1) secure additional guaranteed cash flow (including, on information and belief, so as to entice third parties to lend it money), via additional annual minimum purchase requirements under the Agreement, at a time when Defendant Rolland was experiencing operational struggles, as well as (2) preserve its business relationship with Simply Organic at a time when it benefited from working with a United States-based distributor with patience and liquidity, *i.e.* Simply Organic.

19.     Key Agreement amendments in the Amendment include:

a.     Agreement Section 7.1 was revised, and the term of the Agreement was concomitantly extended, to include required annual "minimum purchase amounts" for calendar years 2019, 2020, and 2021, ranging from €1,700,000, EUR, to €2,550,000, EUR, as well as language providing for automatic yearly increases of twenty percent in and to these minimum purchase amounts,

beginning 2022, absent separate agreement by the Agreement parties or timely provision by Defendant Rolland of a 36 month Agreement termination notice.

    b.   Agreement Sections 7.1 and 14.1 were revised to create a mechanism by which the Agreement could be terminated by Defendant Rolland, and in a manner least disruptive of the Agreement parties' business relationship and Simply Organic's distribution efforts of Defendant Rolland's products in North America. Specifically, if Defendant Rolland desired to terminate the Agreement, including if the Agreement parties could not agree on annual minimum purchase requirements beyond the next three years, and Defendant Rolland did not want to accept the automatic annual twenty percent increase in such requirements, Defendant Rolland could serve a "written notice of termination" by or before January 1 of a given calendar year, and the Agreement would continue in effect until December 31 of the third calendar year thereafter.

        i.   By representative example, this meant that if Defendant Rolland issued a written notice of termination on December 31, 2021, the Agreement would automatically terminate on December 31, 2024.

    c.   The Agreement parties executed the Amendment as of September 15, 2017.

20.    During the first three full calendar years of the Agreement – 2016, 2017, and 2018 – Simply Organic's actual purchases under the Agreement were nearly double the amounts set forth as "minimum" purchase requirements under the Agreement for those years.

21.    Although Defendant Rolland had (1) enjoyed Agreement-derived revenues nearly double the minimum revenues established by the parties for the Agreement to remain successfully in effect, (2) secured additional guaranteed capital over several years via the 2017

Amendment, and (3) was able to, by early 2019, rectify and improve on its persistent production and shipping delays in material part due to Simply Organic's patience and stability as a business partner (and seven-figure revenue source) for Defendant Rolland since 2015, nevertheless, beginning in early 2019, Defendant Lagana, on behalf of his fellow Defendant, began persistently requesting that Simply Organic purchase greater and greater quantities of Defendant Rolland products, at higher prices, than what was set forth in the Agreement and Amendment.

    a. As representative example, in February 2019, Defendant Rolland abruptly solicited a forecast from Simply Organic of its expected purchases under the Agreement for 2019. The Agreement and Amendment established a minimum purchase requirement of €1,700,000, EUR, for 2019; nevertheless, Simply Organic provided to Defendant Rolland a non-binding forecast of €3,000,000, EUR, for 2019. Defendant Lagana demanded, in response, that Simply Organic revise its forecast upward to between €3,700,000, EUR, and €4,200,000, EUR; Simply Organic continued to profess willingness to provide non-binding forecasts of anticipated purchases in future years, but declined to formally amend the 2019 minimum purchase requirements that it had contracted for less than 18 months earlier via the Amendment.

    b. As well, on February 18, 2019, Defendant Rolland's Export Area Manager, Laura Zanoli, sent Simply Organic, via email, from Bologna, Italy, to Pinellas County, Florida, an updated Agreement Price List – with meaningful price increases for purchases under the Agreement – for the Agreement, with an accompanying request that the Price List be made effective April 1, 2019, although the

Agreement and Amendment clearly set forth that any new Price List could not go into effect until January 1, 2020.

22. On April 16, 2019, Defendant Lagana, from Bologna, Italy, sent the CEO of Simply Organic, Scott Mitchell, in Pinellas County, Florida, an email relating to the above-described purchase requirement and price list discussions, during which Defendant Lagana complained about the existence of the Agreement, claiming that other clients of Defendant Rolland had "never felt the need" to sign a written contract with Defendant Rolland, and instead just placed their "trust" in him and Defendant Rolland. In that same email, Defendant Lagana (1) purported to be offended that Simply Organic had "misgivings about [Defendant Rolland] honoring our agreements"; and (2) claimed he could unilaterally declare the Agreement "void" if he wanted to (although recognizing the continuing "legal validity" of the Agreement later in the same sentence).

    a. Defendant Lagana reiterated to Simply Organic's CEO, Scott Mitchell, during multiple face-to-face meetings in Bologna, Italy, including in February and September 2019, that he did not believe in written contracts and wished that Defendant Rolland and Simply Organic had never entered into the Agreement or any other written contract.

23. Representatives of the Agreement parties – Simply Organic's CEO, Scott Mitchell, and President, Ashley Mooney; and Defendant Rolland's Defendant Lagana and Laura Zanoli – met in Bologna, Italy, on September 29, 2019, to again discuss the future of the business relationship between Simply Organic and Defendant Rolland, including via a potential second written amendment of the Agreement.

24.     During this meeting, Defendant Lagana proposed amending the Agreement to include substantial, immediate increases to the price and minimum purchases of Defendant Rolland products, to begin January 1, 2020.  Defendant Lagana added – as memorialized in Meeting Minutes created by Ms. Zanoli – that "it is no longer possible for [Defendant Rolland] to put into place a customised management and to apply extraordinary conditions to a single distributor . . . .  For this reason, we deem necessary to restore the conditions of the current [Agreement and Amendment], to the original parameters that are and have always been used for every single [Defendant Rolland] exclusive distribution contract."  Defendant Lagana also presented to Mr. Mitchell and Ms. Mooney a request to amend the Agreement to provide Simply Organic territorial exclusivity only for United States and Canada-based salons.

25.     During this September 29, 2019, meeting, Simply Organic's representatives informed Defendant Lagana and Ms. Zanoli that in light of Defendant Lagana's and Defendant Rolland's inconstancy and unreliability as business partners – ranging from damaging production and shipping delays to attempted out-of-Agreement product price increases to failed new product lines to Defendant Lagana's strange claims that he could consider the Agreement "void" at his convenience – Simply Organic was revising its 2019 purchase forecast downward from €3,000,000, EUR.  Mr. Mitchell and Ms. Mooney did make clear that Simply Organic's 2019 Agreement purchases would still meaningfully exceed the minimum €1,700,000, EUR, required under the Agreement, and expressed a willingness to, as before, be a stable and patient business partner.

   a.   Mr. Mitchell and Ms. Mooney also made clear, however, that (1) Simply Organic would not entertain any request by Defendant Lagana to (i) "restore" the "original parameters" of other unknown and unseen distribution agreements Defendant

Rolland claimed to have signed, or (ii) diminish in any way Simply Organic's complete territorial exclusivity in and for the United States and Canadian markets under the Agreement; and (2) if Defendant Rolland desired to terminate the Agreement in service of trying to "restore" a new purchasing and distribution arrangement between the Agreement parties, Simply Organic was entitled to at least 36 months notice as set forth in the Agreement and Amendment.

b. Mr. Mitchell reiterated each and all of the above via email to Defendant Lagana, sent from Pinellas County, Florida, to Bologna, Italy, on October 21, 2019.

26. Defendant Lagana made one more attempt to demand a renegotiation of the Agreement in a manner that solely benefitted Defendant Rolland, via a November 4, 2019, email he sent from Bologna, Italy, to Mr. Mitchell in Pinellas County, Florida, with Ms. Mooney of Simply Organic, and Ms. Zanoli of Defendant Rolland, in copy. In this email, Defendant Lagana claimed that he "cannot accept the numbers" set forth as minimum purchase requirements in the Agreement and Amendment, and instead wanted Simply Organic to agree to substantially larger minimum purchase requirements in a "new distribution contract" to "justify" Simply Organic's status as exclusive distributor of Defendant Rolland products in the United States and Canada. Moreover, Defendant Lagana again demanded that any forthcoming amendments to the Agreement, or new agreement between the Agreement parties, reduce to partial Simply Organic's territorial exclusivity for Defendant Rolland products in the United States and Canadian markets: "[T]he [minimum purchase] numbers will refer exclusively to the distribution of hair products in professional hair salons [in the United States and Canada]. We have already shared with you and with all our national and international distributors that the

OWAY Beauty line will be commercially managed by a different division, with distribution strategies that are not connected to the hair salon channel."

27. Simply Organic's CEO, Mr. Mitchell, replied to this email on November 28, 2019, in Pinellas County, Florida, sent to Defendant Lagana in Bologna, Italy, and, in addition to disputing Defendant Rolland's apparent assertion that it could ever strip Simply Organic of a shred of territorial exclusivity without breaching the Agreement, once again made clear that: "I remain interested in finding a solution to the matters between us together, but I believe you fundamentally misunderstand our position. We have been and still are together operating under a valid 2015 Exclusive Distribution Agreement and 2017 Amendment to same. This is not a 'customized management' arrangement, it is a binding contractual arrangement that has contributed significantly to the growth and stability of [Defendant Rolland]. Moreover, we are engaging in significant international commerce, purchasing and importing several millions of euros of goods from your company annually, distributing several millions of dollars of your goods throughout North America annually, and relying on our agreement . . . as a valid and binding instrument."

    a. Mr. Mitchell again invited Defendants, in his reply, to formally present, in writing, any proposed amendments to the Agreement, whether such amendments involved purchase requirements; marketing materials; and/or exclusivity.

    b. Mr. Mitchell received no direct reply from Defendant Lagana, or anyone else from Defendant Rolland, to his November 28, 2019, email.

28. Three weeks later, Defendant Rolland issued a valid written notice of termination of the Agreement, dated December 19, 2019 (the "Termination Letter"), a true and correct copy of which is attached as Exhibit C hereto, which was delivered via DHL to Simply Organic at its

Pinellas County, Florida, business address, in a manner that conformed to the Agreement's notice requirements set forth at Section 18.1.

29.     The Termination Letter stated, in material part, that Defendant Rolland, pursuant to the Agreement's thirty-six month notice requirement for termination, was "declar[ing], with the present letter, [Defendant Rolland's] own will to terminate [the Agreement], with effect from the 31st of December 2022. ***Therefore, until the 31st of December 2022, the Agreement will continue to be effective*** both the parties" (emphasis added).

30.     Defendant Lagana followed up the Termination Letter with a December 20, 2019, email he sent from Bologna, Italy, to Simply Organic's CEO, Scott Mitchell, in Pinellas County, Florida.  The key excerpt of that email is as follows:  "I want to inform you [Mr. Mitchell] that, considering the current contractual conditions applying and in order to avoid the extension of the current [Agreement] for 12 more months, [Simply Organic] will soon receive a termination notice to confirm the natural expiration of the [Agreement] 36 months from now."  In other words, by this email Defendant Lagana purported to (1) provide personal notice to Mr. Mitchell – CEO to CEO – that Defendant Rolland had via the Termination Letter exercised its right to terminate the Agreement on 36 months written notice; and (2) acknowledge to Mr. Mitchell that pursuant to the Agreement, Defendant Rolland was required to provide the Termination Letter by or before January 1, 2020, in order for the Agreement to conclude on December 31, 2022, rather than December 31, 2023.

31.     Simply Organic received no further formal notices pursuant to and in conformance with the Agreement from Defendant Rolland in January, February, March, or April 2020.  In reliance on the Termination Letter, in the following weeks and months, Simply Organic

made additional orders of, and provided substantial payments to Defendant Rolland for, Defendant Rolland products pursuant to the Agreement.

32.     Defendant Rolland continued to correspond with Simply Organic in a manner consistent with (1) the Agreement parties' prior and customary contacts during the lifespan of the Agreement, and (2) its representation in the Termination Letter – and Defendant Lagana's corresponding representations to Mr. Mitchell in his December 20, 2019, email – that the Agreement remained effective through December 31, 2022.  This includes:

a.  A December 24, 2019, email from Matteo Garani, Head of Logistic Department at Defendant Rolland, in Bologna, Italy, to Mr. Mitchell in Pinellas County, Florida, titled "Statistical Reports" and including information on the volume of Simply Organic's purchases under the Agreement in 2018 and 2019.

b.  A January 24, 2020, email from Monia Aversa, Export Department at Defendant Rolland, in Bologna. Italy, with Defendant Rolland's Laura Zanoli in copy, to Mr. Mitchell, Ms. Mooney, and Simply Organic's Chief Financial Officer, Denise Buie, all in Pinellas County, Florida, titled "US Contacts updated to January, 24th" and including an attachment purporting to satisfy Defendant Rolland's requirement under Section 3.2 of the Agreement to inform Simply Organic of "possible business deals within the Territory."  This email attachment included a compilation of United States-based inquiries regarding Defendant Rolland products from salons; professional cosmetologists; and end consumers (*i.e.*, clients), some of whom had sought information from Defendant Rolland on how to order Defendant Rolland products.

c. A March 31, 2020, email from Defendant Rolland's Monia Aversa, with Ms. Zanoli in copy, from Bologna, Italy, to Simply Organic's President, Ms. Mooney, in Pinellas County, Florida, also purporting to satisfy Defendant Rolland's duty under Agreement Section 3.2, by passing along to Ms. Mooney a United States-based inquiry/business opportunity as to Defendant Rolland products.

    i. Ms. Mooney also received related emails in Pinellas County, Florida, from Defendant Rolland's Ms. Zanoli, with Ms. Aversa in copy, from Bologna, Italy, on March 5 and March 31, 2020.

d. Emails sent from Defendant Rolland's Monia Aversa, with Ms. Zanoli in copy, including on December 19, 2019; December 20, 2019; February 17, 2020; and April 28, 2020, to "Partners" of Defendant Rolland, including Simply Organic's Mr. Mitchell, Ms. Mooney, and Ms. Buie, setting forth product, marketing, and scheduling updates for Defendant Rolland products and events – all in a manner and frequency consistent with prior, similar such emails sent from Defendant Rolland and received by Simply Organic during and across the lifespan of the Agreement.

    i. Ms. Mooney received a related, followup email on January 9, 2020, in Pinellas County, Florida, from Defendant Rolland's Francesco Cartechini, Global Education Manager, with Ms. Zanoli and Ms. Aversa in copy, from Bologna, Italy, which provided information regarding a forthcoming Defendant Rolland marketing event and potential participation in same by Simply Organic and a selected United States-based client of Simply Organic.

33.     On April 30, 2020, Mr. Mitchell and Simply Organic learned that Defendant Rolland had just launched an online portal on a website, www.oway.it, under Defendant Rolland's possession, custody, or control, through which Defendant Rolland could market and sell, and was marketing and selling, its products directly to United States-based customers, in direct contravention of Simply Organic's territorial exclusivity under the Agreement.

      a.   Defendant Rolland's online direct sales portal design and operation does not include any means of filtering out or redirecting to Simply Organic any prospective direct purchases of Defendant Rolland products by United States-based salons or professional cosmetologists.

34.     Simply Organic soon received, on May 8, May 15, and May 23, 2020, in Pinellas County, Florida, promotional emails from Defendant Rolland, in Bologna. Italy – emails that were sent to all United States-based, including all Florida-based, members of Defendant Rolland's email list – with links to Defendant Rolland's updated website, including one such email with the subject line "The new oway.it website is officially online!"

35.     By letter dated May 11, 2020, counsel for Defendant Rolland communicated to counsel for Simply Organic that Defendant Rolland considered the Agreement "terminated with immediate effect," although Defendant Rolland had not utilized required procedures, including the required notice and cure mechanisms, for early termination of the Agreement.

36.     Simply Organic expected to generate net revenues totaling between roughly $17 million and $36 million, USD, under and from the Agreement between May 2020 and December 31, 2022, had Defendant Rolland abided by its duties and representations in the Agreement, Amendment, and the Termination Letter.

37.     Unbeknownst to Simply Organic, after the above-pled September 2019 meeting in Bologna, Italy, and the November 4, 2019, email from Defendant Lagana to Simply Organic's CEO, Scott Mitchell; and prior to Defendant Rolland sending Simply Organic the Termination Letter on December 19, 2019, and Defendant Lagana sending his December 20, 2019, email to Mr. Mitchell, Defendant Lagana designed and implemented a plan for Defendant Rolland to prematurely exit the Agreement and launch direct online sales and marketing of Defendant Rolland products into the United States market[1] in a manner that Defendant Lagana believed would allow Defendant Rolland not just to avoid its Agreement obligations to Simply Organic, but (1) advantageously compete with Simply Organic – with respect to Simply Organic's existing stock of Defendant Rolland products – for sales of Defendant Rolland products in the United States; and (2) cause as much damage and confusion as possible to Simply Organic's business and contractual relationships with its existing and prospective clients, to whom Defendant Lagana desired to sell Defendant Rolland products in Simply Organic's stead, and with whom Defendants knew that Simply Organic had covenanted or would covenant by contract that it only markets and sells beauty products, including Defendant Rolland products, to

---

[1] On information and belief, and in light of the customary 5-6 month lead time needed to plan, architect, build, and launch international shipping and e-commerce strategy upgrades such as the website direct sales portal that Defendant Rolland launched circa April 30, 2020 (as pled at paragraph 33 herein), Defendant Rolland, at Defendant Lagana's direction, started the process of building the www.oway.it website's direct sales portal after Defendant Lagana failed to secure amendments to the Agreement via the September 2019 meeting with Simply Organic in Bologna, Italy, or via his November 4, 2019, email to Scott Mitchell, and before he (1) instructed Defendant Rolland to send the lulling Termination Letter, and (2) sent Mr. Mitchell his above-pled December 20, 2019, email, each of which omitted to disclose Defendant Rolland's ongoing efforts to build and launch its online direct sales portal targeting the United States market.

salons and professional cosmetologists, and not directly to end consumers, *i.e.*, actual or prospective clients of salons and professional cosmetologists.[2]

38.     Before the December 19, 2019 Termination Letter, Defendant Lagana (1) directed Defendant Rolland to begin the process of updating its website, www.oway.it, to allow for direct online sales of Defendant Rolland products into and throughout the United States market; (2) directed Defendant Rolland to send the Termination Letter to Simply Organic; and (3) determined to draft and send his December 20, 2019, email to Mr. Mitchell purporting to alert Mr. Mitchell of the "natural expiration of [the Agreement] 36 months from now," including so as to lull Simply Organic into believing Defendant Rolland would abide by the Agreement through and until December 31, 2022.

39.     Defendant Rolland, under Defendant Lagana's supervision, built and prepared to launch the website portal and marketing strategy for direct marketing and sales to United States-based costumers between no later than December 2019 and April 2020; Defendant Rolland, at Defendant Lagana's direction, concealed this from Simply Organic, including during its contacts and transactions with Simply Organic throughout this time period.

40.     Defendant Lagana, including via his December 20, 2019, email to Scott Mitchell; and Defendant Rolland, including at Defendant Lagana's direction, worked to lull Simply Organic into a false sense of security after issuing the Termination Letter, including by Defendant Rolland continuing to engage and communicate with Simply Organic at customary times and in a customary manner, including via email correspondence sent to and from Bologna,

---

[2] Simply Organic refers to this as its "non-diversion policy to our clients," which Simply Organic prominently displays, and displayed, on its website and marketing materials, and which each Defendant knows, and knew, was a bedrock component of Simply Organic's business strategy, reputation, and relationships, across the lifespan of the Agreement.

Italy, and Pinellas County, Florida, as pled earlier herein, as though Defendant Rolland was continuing to abide by its Agreement obligations while it was actually ramping up a website reboot so as to make, and compete with Simply Organic for, sales of Defendant Rolland products to United States-based customers beginning at an advantageous juncture in 2020.

      a.  As well, after providing the Termination Letter, Defendant Rolland fulfilled orders placed by Simply Organic from Pinellas County, Florida, in January; February; and March 2020 with materially greater quantities and proportions of older, earlier-manufactured Defendant Rolland products, including products manufactured by Defendant Rolland in 2016, 2017, and 2018, which was an uncharacteristic Defendant Rolland order fulfillment practice.

41.    Defendant Lagana directed Defendant Rolland to launch its direct sales website portal in April 2020, in the midst of the COVID-19 global public health crisis, including so as to delay and damage Simply Organic's ability to stop Defendant Rolland's breaches of the valuable exclusivity provisions of the Agreement. Defendants designed and timed the launch of this scheme to market and sell products directly into the United States in partial reliance on the existence of a forum selection clause in the Agreement directing the Agreement parties to tribunals in Defendant Rolland's home jurisdiction, in Bologna, Italy.

42.    Defendants expected that the Italian forum selection clause in the Agreement would materially delay Florida-based Simply Organic's efforts to remediate Defendant's Agreement breaches even in a period of global and industry stability; and then determined to take advantage of the ongoing COVID-19 pandemic by launching the Agreement-breaching, direct-to-America online sales initiative without informing Simply Organic, at a time when

Simply Organic would not be able to access, or would be meaningfully delayed in accessing, the courts of Bologna, Italy.

    a. As representative example, Defendant Lagana instructed Defendant Rolland in April 2020, in Bologna, Italy, to begin marketing and selling products directly in and to the United States at a time when Defendants were aware that civil litigation proceedings throughout Italy – including in Bologna, Italy – were suspended due to COVID-19 through at least May 11, 2020, under Art. 36 of Law-Decree no. 23 of April 8, 2020.

    b. As representative example, Defendant Rolland purported to inform Simply Organic that the Agreement was terminated in May 2020, nearly two weeks after beginning to market and sell Defendant Rolland products directly to United States-based customers, although Defendant Rolland failed to follow any of the required procedures to elect early termination under the Agreement.

43. Defendant Rolland, at Defendant Lagana's direction, from Bologna, Italy, on May 8, May 15, and May 23, 2020, in order to compete with and attempt to supplant Simply Organic as distributor of its products in the United States, began sending promotional emails – including emails alerting potential customers to its "new" website – to recipients that included United States-based professional salons and cosmetologists that Defendants knew were actual or potential clients of Simply Organic.

44. In light of all of the above, Simply Organic alleges the following causes of action:

## Count I
## Fraud

45. Plaintiff hereby incorporates the allegations in paragraphs 1 through 44, as if fully set forth herein.

46.     This cause of action seeks money damages against each Defendant for fraud under Florida law.

47.     Defendant Lagana and Defendant Rolland, including at Defendant Lagana's direction, intentionally made a series of false statements of material fact, in the form of both affirmative misrepresentations and omissions of material facts that should have been disclosed, as pled and incorporated herein, including at paragraphs 28-43, to Simply Organic, including in order to lull Simply Organic into failing to detect Defendants' scheme to avoid the Agreement and ambush Simply Organic with a competing, online direct sales portal and marketing campaign targeting the United States market.

48.     As to each of the false statements of material fact, including in the Termination Letter and Defendant Lagana's December 20, 2019, email to Simply Organic's CEO, Scott Mitchell, each Defendant either knew the statement was false when it was made; or made the statement knowing he or it was without knowledge of its truth or falsity.

49.     In making each of these false statements, each Defendant intended for Simply Organic to rely on each such statement, and Simply Organic did in fact rely on each and all of these statements in continuing to transact business with Defendant Rolland under the deceived belief that the Agreement would remain in effect until December 2022.

50.     Simply Organic did not know that each or any of these statements were false at the time it was made, and the falsity of each of these statements was not obvious to it.  Had Simply Organic known the truth regarding each and any of these false statements, Simply Organic would not have transacted business with Defendant Rolland in the manner it did between December 2019 and April 2020, and would have immediately moved to protect its

relationships, territory, and rights under the Agreement in a manner that Defendants knew would have made the direct selling scheme more costly and difficult, if not impossible, to launch.

51.     As a result of these intentional, materially false statements made by Defendant Lagana and, including at Defendant Lagana's direction, Defendant Rolland, with the intention that Simply Organic would rely on each of them, as well as Simply Organic's actual reliance on each and all of them, Simply Organic suffered substantial damages.

WHEREFORE, Plaintiff demands judgment for actual damages against Defendants Rolland and Lagana, plus consequential damages, and for exemplary and punitive damages, and for such other relief as this Court may deem just and proper.

## Count II
## Tortious Interference with Business Relationships

52.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 44, as if fully set forth herein.

53.     This cause of action seeks money damages against each Defendant for tortious interference with business relationships under Florida law.

54.     Simply Organic derives its revenues from online and telephone sales of organic beauty products to salons and professional cosmetologists.

55.     Simply Organic has existing, United States-based salon and professional cosmetologist clients, and actual prospective United States-based salon and professional cosmetologist clients, who access websites; online shops and sales portals; telephone numbers and email addresses; marketing materials; training events; and other business ventures and activities owned and administered by Simply Organic.

56.     Each Defendant is aware of the existence of these actual and prospective salon and professional cosmetologist clients, and Simply Organic's relationships with these existing

and prospective salon and professional cosmetologist clients (including its "non-diversion" pledge), including as a result of (1) each Defendant's direct, frequent dialogue with Simply Organic regarding such clients, and (2) joint design and approval by Defendant Rolland and Simply Organic of Simply Organic's sales and marketing campaigns for Defendant Rolland products targeting these actual and prospective salon and professional cosmetologist clients between execution of the Agreement and early 2020 – *i.e.*, an exhibit to the Amendment that detailed Simply Organic territorial marketing and advertising strategy for Defendant Rolland products, which Defendant Rolland expressly acknowledged and approved of via the Amendment.

57.     The above-described actual and prospective clients of Simply Organic are aware of, or have access to, Defendant Rolland's website direct sales portal and marketing campaign targeting the United States market that was built and launched at the direction of Defendant Lagana.

58.     By secretly developing and launching the www.oway.it website direct sales portal and marketing campaign targeting, and competing with Simply Organic (and Simply Organic's actual and prospective professional clients) for, United States-based customers, Defendants are intentionally and unjustifiably interfering with Simply Organic's contractual and business relationships with these actual and prospective clients, including to the extent Simply Organic's reputation and relationship with these professional clients is substantially premised on its "non diversion" policy pled herein.

59.     As a direct result of the above-pled interference, Simply Organic has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment for actual damages against Defendants Rolland and Lagana, plus consequential damages, and for exemplary and punitive damages, and for such other relief as this Court may deem just and proper.

## Count III
### Breach of Contract

60.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 36, as if fully set forth herein.

61.     This cause of action seeks money damages against Defendant Rolland for breach of contract.

62.     Simply Organic and Defendant Rolland entered into the Agreement, as well as the Amendment to same, as pled herein.

63.     Simply Organic performed its obligations under the Agreement.

64.     As pled herein, including at paragraphs 33-35, Defendant Rolland materially breached the Agreement, including by (1) launching an online website direct sales portal and accompanying marketing campaign targeting the United States market in direct contravention of Sections 2.1, 3.1, and 3.2 of the Agreement; and (2) purporting to terminate the Agreement in a manner that contravened the terms of the Agreement, including Sections 15.1, 15.2, and 18.1 of the Agreement.

65.     The above breaches directly and proximately damaged Simply Organic.

WHEREFORE, Plaintiff demands judgment for actual damages against Defendant Rolland, plus consequential damages, and for such other relief as this Court may deem just and proper.

## Count IV
## Unjust Enrichment

66.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 44, as if fully set forth herein.

67.     This cause of action seeks money damages against Defendant Lagana for unjust enrichment under Florida law.

68.     As pled herein, Simply Organic conferred benefits on Defendant Lagana, including as Defendant Lagana secured substantial compensation in the form of salary and other compensation from Defendant Rolland, as well as short- and long-term financial and operational stability for his entity and employer Defendant Rolland, as a result of Simply Organic's business relationship with and purchases from Defendant Rolland before and after the Termination Letter.

69.     Defendant Lagana had knowledge thereof the benefits conferred on him by Simply Organic.

70.     Defendant Lagana voluntarily accepted and retained these benefits conferred by Simply Organic.

71.     Simply Organic only agreed to confer these benefits on Defendant Lagana for reasons including his and, at his direction, Defendant Rolland's promise to maintain the Agreement parties' business relationship as defined by the Agreement through December 31, 2022, including via the Termination Letter and Defendant Lagana's December 20, 2019, email to Mr. Mitchell.

72.     Under the circumstances pled herein, it would be inequitable for Defendant Lagana to retain these benefits conferred on him by Simply Organic without paying the value thereof to Simply Organic.

WHEREFORE, Plaintiff demands judgment for actual damages against Defendant Lagana, plus consequential damages, and for exemplary and punitive damages, and for such other relief as this Court may deem just and proper.

## Reservation of Rights

Plaintiff reserves the right to further amend this pleading, upon completion of its investigation and pending further discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances, and as allowed by law.

## Jury Demand

Plaintiff requests trial by jury for all counts herein alleged so triable.

Respectfully submitted,

_____
LEIGHTON LEIB
Florida Bar No. 0119263
lleib@knoxleib.com
**KNOX♦LEIB, PLLC**
420 W. Platt Street
Tampa, FL 33606
Telephone: (813) 251-1844

*Attorneys for Plaintiff*